# Mosby et al., Appellants, *v.* Armstrong et al.

*Public officers—Eligibility for office—Controller—Prior holding of office by candidate—Qualification to hold office—Qualification to be elected to office—Calendar years—Official years—Act of June 27, 1895, P. L. 403—Words and phrases—"Eligibility."*

1. In the Act of June 27, 1895, P. L. 403, which provides that a person who holds the office of sheriff shall be ineligible for the office of county controller during the continuance of his office, and for two years thereafter, the word "years" means official and not calendar years.

2. The word "eligible" as used in the act means eligible to hold, or capable of holding, the office of county controller, rather than eligible to be elected to the office.

3. Where the word "eligibility" is used in connection with an officer, and there are no explanatory words indicating that such word is used with reference to the time of election, it has reference to the qualification to hold the office, rather than the qualification to be elected to the office.

4. Where the term of a sheriff expires by the calendar on the first Monday of January, 1926, which was January 4th of the year, he will be eligible to hold the office of county controller under the Act of 1895, although his term as controller will begin on the first Monday of January, 1928, which is January 2d of that year.

5. The provision in the Act of 1895, that a controller "shall always be eligible to reëlection or appointment," has no special significance in construing the previous lapse-of-time provision relating to the sheriff and other officers.

Com. v. Pyle, 18 Pa. 519, explained and distinguished.

*Appeals—Costs—Appeal for a public purpose.*

6. Where the Supreme Court, at the request of all parties, passes upon the legal question raised by a bill in equity filed to enjoin the printing of a name on the ballots and dismissed by the court below on technical grounds, it will not impose the costs on the appellant in affirming the decree of the court below, and this because of the public nature of the question involved.

Argued September 26, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 11, March T., 1928, by plaintiffs, from decree of C. P. Allegheny Co., Oct. T., 1927, No. 2047, dismissing bill in equity, in case of Lula Mosby and Joseph Painter v. Joseph G. Armstrong. et al., County Commissioners of Allegheny County, and Robert G. Woodside. Affirmed.

Bill for injunction. Before REID, J.
The opinion of the Supreme Court states the facts.
Bill dismissed. Plaintiffs appealed.

*Error assigned,* inter alia, was decree, quoting record.

*F. C. McGirr,* for appellants.—The court should have sustained the bill on the ground of defendant Woodside's ineligibility to the office of county controller and for his election at either or both of the primaries and general elections: Com. v. Pyle, 18 Pa. 519; Com. v. Kelly, 255 Pa. 475.

The court below had jurisdiction in this case: Blankenburg v. Black, 200 Pa. 629; Buckley v. Holmes, 259 Pa. 176; Winslow's Nomination, 37 Pa. C. C. R. 642; Meisel v. O'Neil, 233 Pa. 213.

The meaning of the words "two years thereafter" defining the time that must have elapsed between the end of the sheriff's term before he can be elected to the office of controller, means, we think, two full years after the end of the sheriff's term: Com. v. Maxwell, 27 Pa. 444.

*George E. Alter,* of *Alter, Wright & Baron,* with him *W. Heber Dithrich* and *Wm. C. Jacobs,* for appellees.— Appellants and appellees disagree as to whether the words "eligible" and "ineligible," as used in this section, mean capable of taking the office or qualified to be elected to it. We are confident it means the former.

The court had no jurisdiction: Abbott's Nomination, 1 Pa. D. & C. R. 600.

We submit that the two-year provision, insofar as it relates to the eligibility of the sheriff, district attorney and other county officers, relates to official years and not to calendar years.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, October 6, 1927:

In form, this was a proceeding in equity, a taxpayers' bill against the county commissioners of Allegheny County and Robert G. Woodside, to restrain the former from printing the name of the latter, as a candidate for the office of county controller, on the ballots to be used at the primary election of September 20, 1927, and, if he should receive a party nomination at that primary, then on the ballots for the general election to be held November 8, 1927.

Section 2 of the Act of June 27, 1895, P. L. 403, commonly called the "Controllers' Act," provides as follows: "No person holding office under the United States shall be eligible to the office of county controller during his continuance in office as aforesaid, nor until one year thereafter; and the county commissioners, county treasurer, prothonotary, register of wills, clerk of the courts, recorder of deeds, sheriff and district attorney, and their chief clerks or deputies, shall be ineligible, for two years, to the office of county controller, provided the said controller shall always be eligible to reëlection or appointment."

Plaintiffs contend that Woodside is ineligible to stand as a candidate for the office of county controller, because, both at the date of the general election in November, 1927, and at the time the next term of office begins, two full years will not have expired since his term as sheriff of Allegheny County terminated; that if he were elected as controller, his term in that office would begin on the first Monday of January, 1928, which will be January 2d, and that his term of office as sheriff of that county did not expire until the first Monday of

January, 1926, or January 4th of that year, being less than two full calendar years prior to the first Monday in January, or January 2, 1928.

The court below did not consider the question of Woodside's eligibility, but dismissed the bill because, in its opinion, the averments and prayers thereof merely amounted to an ineffectual attack upon his nomination petitions,—ineffectual because it failed to bring the case within either the provisions of the Primary Act of July 12, 1913, P. L. 719, or the procedure there ordained.

Both plaintiffs and defendants, particularly defendant Woodside, asked that, owing to the very short time which will elapse between the hearing of this appeal and the last day for sending the form of the ticket to the printer, we should take jurisdiction of the case and decide the question of the candidate's eligibility for the office of county controller as though the proceedings in the court below had been for a declaratory judgment determining his legal status in that regard, and as though the points of law involved had been decided in his favor; or that we should at least consider the propriety of that tribunal's refusal to grant the relief prayed for.

The question of the right to print Woodside's name on the primary election ballot is moot, for that election was held and he was nominated as the Republican candidate for county controller prior to the argument on this appeal; and it is questionable whether the prayer to restrain the printing of his name on the general election ballot was not premature, since, at the time these proceedings were instituted, there was no certainty that he would win a party nomination at the primary; finally, we are far from convinced that the court below. erred in dismissing plaintiffs' bill without considering the eligibility question; but in view of the very broad joint request of all parties to the record, we shall consider that point and determine the status of Woodside, so far as the legal right to have his name printed on the

November ballot as a candidate for the office in controversy is involved.

By eliminating from section 2 of the Act of 1895 (quoted above in full) such language as has no reference to the office of sheriff, previously held by Woodside, transposing certain words where that course is warranted, and inserting others where they are plainly implied, the section, as we interpret its meaning, would read thus: No person holding the office of sheriff shall be eligible to hold the office of county controller during his continuance in office as sheriff and for two years thereafter.

In constitutional provisions and statutes fixing terms of office, the phraseology usually employed is, for example, "shall hold their offices for the term of four years, beginning on the first Monday of January next after their election" (section 2, article XIV, of Constitution of Pennsylvania, as amended November 2, 1909, 5 Purdon, 5202), or that the officer shall be elected "on the first Tuesday after the first Monday of November . . . . . . to serve . . . . . . for a term of three years" (section 1, Act of 1895, supra). It is obvious that, under such phraseology, the terms named can never cover an exact number of calendar years, that each term must comprehend more or less than a calendar year; and therefore, it is only reasonable to assume that, whenever the word "years" is used in legislation of this kind, official, and not calendar, years are meant. We are of opinion that the word "years," as employed in the Act of 1895, means official years and not calendar years.

In Paris v. Hiram, 12 Mass. 261, 264, the court ruled that the term "one whole year," used in the statute before it for construction, "must be understood to be a political or . . . . . . municipal year, namely, from the time the officer is chosen, until a new choice takes place, at the next annual meeting for the choice of town officers; which may sometimes exceed and sometimes fall short of a calendar year." In King v. Swyer, 10 Barn. & C.

486, 109 Eng. Reprints 531, 532, 533, the mayor of an English town was forbidden by law to be again elected to that office "within the space of three years next ensuing the end and determination of" his term. The time intervening between the expiration of the defendant's term and the time he was reëlected was less than three calendar years, but, nevertheless, covered three official years. The court said it was "of opinion that the word year [as used in the law governing the case] imports not a solar, but a charter year." So, here, we are of opinion that the word "years" in the Act 1895 imports not calendar, but official years. If this were not so, then it would follow that because the first Monday of January, 1928, happens to come a little earlier in the month than the first Monday of January, 1926, the sheriff whose term expired in 1926 could not become county controller, by regular course of election, for six years, while a sheriff whose term expired in some other year might become county controller at the expiration of two years. The law should not be thus construed when there is a way to avoid it.

As previously indicated by our statement of the manner in which section two of the Act of 1895 should be read, we are also of opinion that the word "eligible" in that statutory provision, means eligible to hold, or capable of holding, the office of county controller, rather than qualified to be elected to it, as contended by appellants. In the first place, the use of the words "no person holding," in the early part of the section, suggests that the words "shall be eligible to the office," following thereafter, mean "shall be eligible to hold"; and, in the next place, if the legislature intended to provide as to eligibility to be elected, instead of eligibility to hold, it could have accomplished this by employing plain words, as it did in the case of county treasurers, when it provided by section 3 of the Act of May 27, 1841, P. L. 400, that persons holding certain other positions therein named should not be "eligible to election as county

treasurer" during their terms of office or until the expiration of one year thereafter.

We have not overlooked the provision at the end of section 2 of the Act of 1895, to the effect that a controller "shall always be eligible to reëlection or appointment," nor the argument of counsel for appellants that this shows it was the intention of the legislature to provide that a sheriff should not be eligible for election to the office of county controller for a period of two years after the end of his term as sheriff. We do not, however, agree with this contention. To our mind the above-quoted words can as well be used to sustain appellees' contention as appellants'; for, if the phrase "eligible to reëlection" is the proper expression to secure one's right to be elected, it would seem to follow that the dissimilar phrase, "eligible to the office," previously used in this section of the act, means something different from the right to be elected, and must mean, as we have construed it, the right to take and hold the office. The phrase "eligible to reëlection" was, however, a simple and natural one for the legislature to use in ordaining that one holding the office of controller should be entitled to succeed himself notwithstanding the other provisions in the act which require a fixed lapse of time between the expiration of a sheriff's term and his right to become a county controller; and therefore the use of that phrase has no special significance in construing such lapse-of-time provision.

In Com. v. Pyle, 18 Pa. 519, 521, relied on by appellants, Chief Justice BLACK said the rule was that "Where......a statute declares that certain disqualifications shall render a person ineligible to an office, he must get rid of his disqualification before he is...... elected......but if the law merely forbids him to hold or enjoy the office......, it is sufficient that he qualifies himself before he is sworn." This, we agree with counsel for appellees, is dicta, for the statute in that case used neither the word "eligible" nor "ineligible," and the

subject of choosing or electing one to office was in no sense involved in the litigation before the court. All that we really decided in Com. v. Pyle (as later explained by us in DeTurk v. Com., 129 Pa. 151, 161) was that "a stockholder in a bank could not hold the office of notary public, because, by the Act of April 14, 1840, the legislature had so declared." In fact, the opinion states: "We have only to determine......whether [defendant] is a stockholder in the bank"; and that fact was found against him. In DeTurk v. Com., we particularly explained that, in view of this finding of fact, all that Chief Justice BLACK said "with reference to incompatible offices," or, in other words, his statement of the above-quoted general rule, "was not necessary to the determination of the question before the court" in the Pyle Case. If, however, we should accept what was written in the latter case as stating a proper rule, it has since been mentioned by us in only one other opinion: Com. ex rel. v. Kelly, 255 Pa. 475, 483; the last named case, as also the DeTurk Case, and (according to the construction which we have already put upon the Act of 1895) the present case, all fall within the part of the rule which relates to a situation where "the law merely forbids" one "to hold or enjoy" an office; the rule itself states that, under such circumstances, it is sufficient if the candidate becomes qualified before the time arrives for him to assume the post in question.

Numerous reported decisions from various jurisdictions have been cited to us, some ruling that a person must be fully qualified to hold an office at the date of his election thereto, and others that the question of eligibility is referable to the date when he is to take office. As said in 22 Ruling Case Law, 402, 403, "The courts do not agree as to the time at which the eligibility or qualification of a person for public office must be determined. The question has arisen most frequently under statutory or constitutional provisions using the word 'eligible' in connection with certain qualifications or disqualifications for public office. One line of authorities holds that

the time of election is the proper time to test whether a person is qualified or eligible, and that it is immaterial that a person then disqualified removes the disqualification before actually entering on the duties of the office.

......But the weight of authority appears to be that where the word 'eligibility' is used in connection with an office, and there are no explanatory words indicating that such word is used with reference to the time of election, it has reference to the qualification to hold the office, rather than the qualification to be elected to the office."

It may be, as decided in certain cases, that, where one seeking nomination for, or election to, an office, is unquestionably ineligible for the position, owing to a disqualifying cause of which he, by some action of his own, may rid himself, the law requires him to take such action before his nomination or election; and this for the reason that it will not be assumed the electors intend to run the risk of the removal of the disability between the date of the candidate's election and the day fixed for the commencement of his official term.  But that reason is inapplicable to this case; here, the elector runs no such risk, for, in the poetic language of senior counsel for appellees, on the day of the election every one will know (as presumably was known theretofore) that, so far as the present question of eligibility is concerned, "the stars in their courses will have him [the candidate] qualified and ready when the time comes to take the office."

We conclude that Robert G. Woodside may lawfully be elected to the office for which he is a candidate and therefore his name may be printed on the ballots for the coming election, and the court below did not err in dismissing plaintiff's bill; but, since the proceedings in this court have been treated by all parties to the record as if the appeal were taken to accomplish a public purpose, we shall not put the costs thereof on appellants.

The decree is affirmed, costs of appeal to be paid by the County of Allegheny.