## Commonwealth ex rel. v. Roblyer

*H. K. Mitchell,* for plaintiff; *Schrier & Vallilee,* for defendant.

CULVER, P. J., March 7, 1932.—This is a quo warranto proceeding to determine by what authority the defendant,. Grant Roblyer, is holding the office of assessor and acting as such assessor in the Township of South Creek, Bradford County, Pa.

The defendant answers that he is holding said office by virtue of a certificate of election issued by the proper authorities, showing that he was regularly elected assessor for South Creek Township at the November election, 1931. All parties concede that this allegation is true.

The relator replies: while it is true you were so elected assessor for said township, yet, nevertheless, you were not a qualified elector of said township at the time of the election whereat you were elected.

The defendant replies that he was a qualified elector of the said township at said time.

To understand this case, it is necessary to state the following facts: South Creek Township and Ridgebury Township adjoin each other in the County of Bradford. Out of contiguous parts of these two townships the Doty Hill Independent School District was created and still exists. The territory embraced within the independent school district is in part in South Creek Township and in part in Ridgebury Township, and the schoolhouse of said district is located in South Creek Township.

The defendant, Grant Roblyer, for many years lived in the Township of South Creek, voted therein, and for many years last past has held the office of assessor in said township. In the year 1929, while living in South Creek Township and while holding and exercising the office of assessor in said township, the defendant, Grant Roblyer, who is a teacher in the public schools of this county, was hired to teach the Doty Hill Independent School District school, and the evidence indicates that at the expiration of the term for which he was first

hired he was rehired for a subsequent term, and has continued as a teacher of said district to the present time.

Defendant being unable to find a house in South Creek Township which was convenient to the schoolhouse wherein he was engaged to teach, temporarily rented a house and some land near the said schoolhouse, but on the Ridgebury Township side of the line, moved his family therein, and lived there temporarily, at all times expressing his intention to remain a resident of South Creek Township and to move back into the township as soon as he could find a suitable place to live.

The evidence discloses that he made different efforts to find a house in South Creek Township, and at one time rented a place, with the agreement with the owner he would vacate if the owner sold the place, and the evidence discloses that the owner did, a few days after so renting it to defendant, sell the place, and defendant was prevented from moving therein.

The defendant not only at all times expressed his intention of retaining South Creek as his residence and of returning there as soon as he could find a house to move into but at all times declared that he had no intention of remaining in Ridgebury Township and that his stay there was temporary only. To show that his declared intention was bona fide, he slept in the schoolhouse, wherein he taught in South Creek Township, some of the time and maintained a room in which he slept at times in a private dwelling in South Creek Township.

After the November election and before his term of office began, he succeeded in finding a house in South Creek Township wherein he could live, rented the same and moved his family therein, and has resided there to the present time and intends to reside in said township permanently.

From all the evidence in this case, we have no doubt of the bona fides of defendant's intention to reside at all times in South Creek Township and to retain his home, his residence, therein. Nor have we any doubt of the bona fides of his declaration that at no time did he intend to reside or remain permanently in Ridgebury Township. His stay with his family in Ridgebury Township was temporary only, and with the bona fide intention upon his part to retain his residence in South Creek Township. During all the time he occupied the house in Ridgebury Township, while teaching at Doty Hill independent school, he was assessed, paid his taxes and voted in South Creek Township and held the office of assessor therein. The electors of South Creek Township reëlected him assessor at the last November election and he should not be deprived of said office unless, under the Constitution and the law, he is ineligible to the said office. This brings us to the consideration of the question whether or not he is eligible to hold said office. Section 140 of The General Township Act of July 14, 1917, P. L. 840, provides: "No person shall be eligible to any office in any township of the second class unless he is an elector of the township for which he is chosen."

The only qualification of an elector alleged as not being possessed by the defendant is that he did not have a "residence" in South Creek Township. This brings us to the consideration of the question whether or not he had such residence in said township as to qualify him for the office of assessor. The word "residence" as used in the various acts of assembly relating to different subject matters has various interpretations. In Com. v. Dight, 16 Dist. R. 890, Judge Shafer said:

"The term 'residence' is one which it is concededly difficult to define, and one which has different meanings under different circumstances. In some cases it is construed to be equivalent to domicile. In other cases it has been held that a man may be domiciled in one place and actually reside in another, at least for

many purposes, and in one case pointed out to us in another jurisdiction in which a statute made the carrying away of any child from its place of residence, for certain purposes, a crime, it was held that residence meant, in that case, any place where the child was lawfully remaining, whether temporarily or otherwise. The character of the abiding in a place which amounts to a residence seems, therefore, to depend upon the nature of the reason for requiring it in the particular case. We have no doubt that the facts above described would not constitute the witness a resident in New Jersey for the purpose of voting there, supposing the law there to be the same as that of this Commonwealth, and we have equally no doubt that, if a summons were served on the witness by leaving it with his wife at his summer home in New Jersey, that would have been a service upon an adult member of his family at his place of residence."

From the authorities we are satisfied that the meaning of the term "residence" as used in the Constitution in declaring the necessary qualifications of an elector is synonymous with "domicile," i. e., his home, the place where he intends to return when temporarily away and where he intends to remain permanently.

The relator in this case takes the broad position that such place of residence can only be where the person actually, even though temporarily, is, and cites a number of county court cases which appear to sustain this contention.

In Com. v. Devine, 14 Dist. R. 1, defendant was convicted of illegally voting. The facts were briefly stated by the defendant:

"He testified that he had asked the son of the gentleman residing at No. 207 Stamper street to give his name to the assessor, so that he could have a place to vote from; that his name was so given, and that he voted, as alleged. He further testified that he never had any connection with the house beyond that stated above; that he never slept, ate or rented a room there, and never had any of his belongings in the house at any time; that, as a matter of fact, he lived around at different lodging-houses, having no settled home, and thought that, having his name put on the list as residing at No. 207 Stamper street, would give him the right to vote from that house; that he had no other residence in the division."

From all the authorities it is clear that Devine had no such residence or domicile as the law requires to qualify him as a voter. He had never resided in the district, had never voted in the district, had never had any permanent home or place where he stayed in the district, nor had he any intention of permanently remaining therein.

In Springer's Contested Election, 42 Pa. C. C. 645, one of the requisite signers of the petition, who, under the law, must have been a qualified elector of the election district, was not and never had been a resident of the election district. His permanent residence, home and domicile, was in an adjoining district, but because of uncertainty as to the exact division line, he had voted in the district in which he had not resided, but supposing that he did reside in such district. Five months prior to the election in question the line marking the division of the election district was established by proper court proceedings, and instead of residing in the election district wherein he voted, he actually resided in the other district and had so resided for many years. We cannot see how this case has application to the case at bar.

Com. ex rel. Walker v. Hoke et al., 2 D. & C. 766, is a case with facts more nearly in harmony with the case at bar. In that case Carrie Walker and her husband had for a long time lived in the second precinct of the third ward of the City of Pottsville and were qualified voters in that ward. Her husband was born and had always resided within the ward. On April 1, 1919, his duties as deputy warden of the Schuylkill County Jail required him to move into a house

belonging to the county on the jail premises in the fifth ward of Pottsville, whither he and his wife then moved and continuously lived until the question arose as to their voting residence. Mrs. Walker was the matron of the detention house for juveniles, and the home occupied by her and Mr. Walker was used for the purpose of a detention house. Mrs. Walker's constant presence was necessary at the place for the performance of her official duties and her husband's duty required his presence at the prison in the fifth ward at all times. They both testified that their prison residence was only temporary and while they resided in their present position as deputy warden of the prison and matron of the detention house, and that, upon the termination of their services in those offices, they intended to again take up their residence somewhere in the second precinct of the third ward of Pottsville. Judge Koch in that case held that they did not have such residence in the second precinct of the third ward as to entitle them to vote therein. He makes one significant finding as follows:

"The petitioner seems to intend to remain in the 5th Ward indefinitely and has no present intention to leave it. For the time being, she has her home where she now lives, and will continue to have it there as long as she holds her present position."

That seemed to be the controlling fact in the case. In the case at bar no such condition exists. Defendant in this case never intended to remain in Ridgebury Township indefinitely, and he always, while temporarily staying there, intended to return within the limits of South Creek Township as soon as he possibly could, and has carried out that intention by returning to South Creek Township with his family before assuming the duties of his office.

We are of opinion that an elector residing in an election district who, without any intention of abandoning his domicile and residence, temporarily takes his family to another district in which he has no intention of remaining or acquiring a residence or domicile, and who in every way possible evidences his intention of retaining his residence and domicile in the district which he temporarily left, and to which he bona fide intended to return, does not, by such act, lose his residence within the original district, nor could he, under such circumstances, by any possibility acquire a residence in the district wherein he moved for such temporary purpose. To acquire a residence entitling him to vote in the new district requires not only his actual presence therein but the intention to make it his permanent place of abode.

As we interpret the opinions of the appellate courts, defendant in this case is not disqualified to hold the office of assessor in South Creek Township. Fry's Election Case, 71 Pa. 302, appears to be the leading case on the question involved in the case at bar. In that case the question was whether or not certain students at Muhlenberg College in the second ward in the City of Allentown were qualified to vote in that ward. Mr. Justice Agnew said (page 305):

"The question turns wholly upon their residence, the students being otherwise duly qualified voters. The case states—'that they claimed that their residence was in said college, where they have lived from one to three years; that they came to Allentown from other counties, for no other purpose than to receive a collegiate education, but intended to leave after graduating.'"

The case further says that the students were divided into two classes (pages 310-311):

" 'Those who support themselves, or are assisted pecuniarily by persons other than their parents, are emancipated from their father's families; have left the home of their parents and never intend to return and make it a permanent abode.' Having, as the case states, come to Allentown for no other purpose than to receive a collegiate education, and intending to leave after graduating,"

Justice Agnew said of this class, at page 311: "They have not lost their home domicil, and could vote there on returning to it though they should not reënter their father's house."

The second class were those students who were supported by their parents, visiting their parents' home during vacation, and who might or might not return there after graduating. Of this class, Justice Agnew said (page 311):

"It is clear as to both classes the college is not their home. They are not members of the community among whom they sojourn. They have no common interest; do not intend to live with, or to cast their lot among them."

The same comment is applicable to the defendant in the case at bar, that he was not a resident and entitled to vote in the Township of Ridgebury, to which township he came for the purpose of convenience while teaching the school and in which township he had no interests, nor did he intend to remain longer than he was obliged, and at all times while so temporarily there was claiming South Creek as his home and was intending to return to South Creek at the earliest opportunity.

Justice Agnew in the opinion in that case further said (page 306):

"It is obvious, therefore, that the state residence and the district residence are of the same nature, and whatever is necessary to constitute the one, is essential to define the other; the only difference being in their time of duration."

It is evident that the term "inhabitant" or "resident" in these clauses cannot mean one sojourning temporarily or for some special purpose, but refers to one who has a permanent abode.

"It is equally clear, that the electors of the state are those who have their homes within it, and not elsewhere. Their domicil is there, and their home is the place where they permanently reside, and to which they intend to return when away from it. It is also clear, that one domiciled in another state cannot be an elector here, though he be resident here for some temporary purpose, or on some special business, and though his stay may be prolonged upward of a year. Therefore, when the Constitution declares that the elector must be a resident of the state for one year, it refers beyond question, to the state as his home or domicil, and not as the place of a temporary sojourn. This being the character of the state residence, it defines, as we have seen, the district residence; for both are members of the same sentence and are qualified by the same words. . . . If he have a fixed and permanent home in one district, he cannot, because dwelling temporarily in another, in the prosecution of his business, vote in the latter" (pages 307-308).

Mr. Justice Agnew further approves the language of Mr. Story in his Conflict of Laws as follows (page 309):

" 'Two things (he says) must concur to constitute domicil—first, residence; and, secondly, the intention of making it the home of the party. There must be the fact and the intent.' "

In delivering the opinion of the court in Guier v. O'Daniel et al., reported in a note to Desebats v. Berguier, 1 Binney 336, at pages 351, 352, Judge Rush said:

"The apparent or avowed intention of *constant* residence, not the manner of it, constitutes the domicil. . . . It may be defined . . . to be *a residence at a particular place accompanied with positive or presumptive proof of continuing it an unlimited time.*"

In the case of James Casey, an insolvent debtor, 1 Ashmead 126, Judge King said:

"Removal out of the state, without an intention permanently to reside elsewhere, will not lose residence, nor will a mere intention to remove permanently, not followed by actual removal, acquire it."

After considering the many cases cited, Mr. Justice Agnew in Fry's Election Case makes the following comment (pages 309-310):

"These extracts will enable us to understand more clearly the term residence as denoting that home or domicil which the third article of the Constitution applies to the freemen of the Commonwealth. It means that place where the elector makes his permanent or true home, his principal place of business, and his family residence, if he have one; where he intends to remain indefinitely, and without a present intention to depart; when he leaves it he intends to return to it, and after his return he deems himself at home. It remains now to apply these characteristics of residence to the case in hand. The stated case expressly declares that the students referred to in it, came to Allentown from other counties, for *no other* purpose than to receive a collegiate education, but *intended to leave* after graduating. It is evident that the college was not their true and permanent home; their stay there was not to be indefinite, as the place of a fixed abode, until future circumstances should induce them to remove. Their purpose was indefinite and temporary, and when accomplished they intended to leave. They retained their original domicil, for the facts stated show that they never lost it. On this point the authorities are in entire accord. 'The third rule I shall extract (said the Master of the Rolls) is, that the original domicil, or as it is called *forum originis,* or the domicil of origin, is to prevail until the party not only has acquired another, but has manifested and carried into execution an intention of abandoning his former domicil, and taking another as his sole domicil.' "

Justice Agnew further said, at pages 310-311:

"These principles enable us now to dispose of the first of the two classes into which the stated case divides these students, viz.: 'Those who support themselves, or are assisted pecuniarily by persons other than their parents, are emancipated from their father's families; have left the home of their parents and never intend to return and make it a permanent abode.' Having, as the case states, come to Allentown for *no other* purpose than to receive a collegiate education, and intending to leave after graduating, they have not lost their home domicil, and could vote there on returning to it though they should not reënter their father's house.

"Emancipation from their father's family and independent support, and the leaving of the home belonging to their parents, have not forfeited their own domicil. Their father's house is not necessarily their home, but the place is where it is. Though not in the bosom of that family, the place of their residence is not lost to them until they have voluntarily changed it and found a new home."

Applying the above principles to the case at bar, the evidence clearly showing, and we specifically finding as a fact that defendant's stay in Ridgebury Township was temporary only, that he never had an intention of remaining there longer than he was obliged to, when finding a satisfactory place to move his family into South Creek Township, and that he at all times intended South Creek to be and remain his domicil and his home, we are of opinion that defendant was a qualified elector of South Creek Township when elected to the office of assessor.

There can be no question that defendant had a bona fide voting residence in the Township of South Creek before he temporarily left South Creek Township for the purpose of teaching the school in question. It, therefore, seems plain that by his temporary absence, for a specific purpose, with his bona fide intention of remaining a resident of South Creek Township and of returning his family thereto, at the earliest opportunity, and with no intention of acquiring a

residence in any other place, and this followed by his actual return with his family to the said district, he did not lose his residence in South Creek Township.

In Dawson's Registration, 9 D. & C. 9, notwithstanding the fact that petitioner and his wife testified that they had no intention of remaining in the district where they were then living, but always intended to return to their previous district, yet they were contradicted by the evidence of witnesses that while living in the previous district and just before removing therefrom, Dawson declared to persons at the election "that they would not be bothered with him at the next election, for he was moving out of the county, and he stated that he was seeking a tenant to occupy the house or his home from which he was about to remove."

Subsequently he did so remove. On the evidence in that case, the court made the following finding of fact:

"The court finds as a fact from all the evidence in this case that the petitioner and his wife, Jennie Dawson, abandoned their residence in precinct No. 2, Jefferson Township, Greene County, Pa., and removed therefrom to East Bethlehem Township, Washington County, with the intention at the time of giving up his residence in Greene County and acquiring residence and citizenship in East Bethlehem Township, Washington County, Pa."

In other words, the evidence as to the intention of the petitioner in that case to abandon the election district in Greene County was a disputed question and the court found against the petitioner's contention. In the case at bar, we find that the petitioner did not abandon his residence in South Creek Township; that he never had any intention of abandoning it, but at all times intended that his absence would be temporary only, and that he would return to South Creek Township at the earliest opportunity, and that he has actually so returned.

Judge Sayers, we think, correctly stated the law in Dawson's Registration, supra, at page 11, as follows:

"Residence is a question of fact and intention, and not of intention alone. It is to be determined by the facts and circumstances in each particular case."

While the question under consideration in Raymond v. Leishman, 243 Pa. 64, was as to the meaning of the word "residence" as used in the act of assembly relating to foreign attachments, which term, under the authorities, seems to be given a different meaning from the word "residence" as used in the Constitution prescribing the qualification of electors, yet the language of Mr. Justice Mestrezat at page 68 throws light upon the entire question:

"The learned court below held that in contemplation of the act, 'residence' is synonymous with 'domicil,' and that as the defendant had his domicil in this State, the writ would not lie against him. We do not think this conclusion is sustained either by reason or by the weight of authority. 'Residence' is often used to express different meanings, according to the subject matter. . . . It may be said to be the dwelling place of a person and may be his permanent or temporary abode. It may mean the domicil of the person or his temporary presence in the locality. Domicil has been well defined to be the place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. It is acquired by residence with the intention of remaining in the locality. A person may have his domicil in one state and be engaged in business in another and thereby acquire a temporary residence in the latter. He retains his former domicil until he acquires another, that is, until he removes to another locality with the intention of making it his permanent abode. A man can have but one domicil for one and the same purpose at any one time, though he may have numerous places of

residence. His place of residence may be, and most generally is, his place of domicil, but it obviously is not by any means necessarily so, for no length of residence without the intention of remaining will constitute domicil."

"It is a fundamental rule that every man is deemed to have a domicil somewhere, that he can have but one, and that until another is acquired elsewhere he retains the domicil of his origin. Consequently one domicil cannot be lost until a new one is acquired, and conversely the acquisition of a new domicil ipso facto terminates the old:" 9 R. C. L. 538, 539.

"Intent as to Establishment or Change of Domicil.—Whether a man has changed his residence from one state to another, so as to have become a citizen of the latter, must depend very largely upon his intention. The general rule is that domicil is changed from one place to another, or one state to another, only by the abandonment by a person of his first place of domicil with the intention not to return, and by taking up his residence in another place with the intention of permanently residing in that place. In other words, to effect a change of residence or domicil, there must be an actual abandonment of the first domicil, coupled with an intention not to return to it, and there must be a new domicil acquired by actual residence in another place or jurisdiction, with the intention of making the last acquired residence a permanent home:" 9 R. C. L. 542.

"Temporary Change of Residence.—An absence from one's residence for months or even years, on business or pleasure, if all the while the person intends to be absent merely for a temporary purpose, to be followed by a resumption of the former residence, is not an abandonment of or change in residence:" 9 R. C. L. 554.

Defendant further contends that, inasmuch as plaintiff's petition does not allege that defendant was not a resident of South Creek Township at the beginning of his term of office, it is fatally defective.

The General Township Act above referred to prescribing the qualifications of an assessor provides as follows: "No person shall be eligible to any office in any township of the second class unless he is an elector of the township for which he is chosen."

The qualification relates to the term of office and is silent as to being eligible to election for the term of office. In Mosby et al. v. Armstrong et al., 290 Pa. 517, 522, Mr. Chief Justice Moschzisker said:

"As previously indicated by our statement of the manner in which section two of the Act of 1895 should be read, we are also of opinion that the word 'eligible' in that statutory provision, means eligible to hold, or capable of holding, the office of county controller, rather than qualified to be elected to it, as contended by appellants. In the first place, the use of the words 'no person holding,' in the early part of the section, suggests that the words 'shall be eligible to the office,' following thereafter, mean 'shall be eligible to hold;' and, in the next place, if the legislature intended to provide as to eligibility to be elected, instead of eligibility to hold, it could have accomplished this by employing plain words, as it did in the case of county treasurers, when it provided by section three of the Act of May 27, 1841, P. L. 400, that persons holding certain other positions therein named should not be 'eligible to election as county treasurer' during their terms of office or until the expiration of one year thereafter."

And further in the opinion:

"To our mind the above-quoted words can as well be used to sustain appellees' contention as appellants'; for, if the phrase 'eligible to reëlection' is the proper expression to secure one's right to be elected, it would seem to follow that the dissimilar phrase, 'eligible to the office,' previously used in this section of the

act, means something different from the right to be elected, and must mean, as we have construed it, the right to take and hold the office."

Relator contends that, inasmuch as defendant did not remove his family to South Creek Township more than sixty days before the beginning of his term of office, he was not, therefore, an elector at that time. This, of course, is predicated upon the assumption that he had previously lost his residence in South Creek Township, which we find he had not done. However that contention may be decided, defendant is a qualified elector at the present time and is a de facto officer. From the view we take of the case, it is not necessary to determine what effect this latter contention may have.

### Order

And now, to wit, March 7, 1932, after due and careful consideration of this case, the court finds that defendant, Grant Roblyer, was at the time of his election to the office of assessor in South Creek Township, this county, duly and legally qualified to hold the said office, and is, therefore, entitled to have and to hold the said office during the term for which he was elected. The questions involved in this case are decided in favor of defendant and against the relator. Costs to be paid by relator. An exception is noted for relator and a bill sealed.

From Rodney A. Mercur, Towanda, Pa.