## Horton Petition

*James H. Gorbey*, for petitioner.

*Albert Blumberg*, for nominee.

DIGGINS, J., March 29, 1957.—This matter comes on to be heard on a petition filed as above captioned, praying the court to set aside the nomination petition of Donald Horton, who filed a nomination petition for the office of "comptroller" of Ridley Township on the ground that, first, the office of "comptroller" does not exist in the township and on the further ground that the said Donald Horton is not eligible to hold the

position of controller. A responsive answer was filed by the candidate and also by the election board, the election board taking a neutral position, and the candidate taking an adverse position.

The court directed that a hearing be held on March 26, 1957 at 2 p. m., and the hearing was held and testimony taken, and the matter is now before us for adjudication.

The questions of law raised are these:

(a) May a nomination petition for the office of controller of a first class township be set aside by the court for the reason that the candidate designated the office sought as "comptroller"?

(b) Does the court have jurisdiction to pass upon the qualifications of a candidate in a proceeding to set aside the nomination petition?

(c) Are the qualifications of a public official to be determined as of, or immediately prior to, his induction into office, rather than as of the time of the filing of a nomination petition?

So far as the question of diction or spelling is concerned, we think there is no merit in that challenge in the petition to strike. All authorities agree that the word "comptroller" and the word "controller" mean exactly the same thing, and the authoritative consensus is to the effect that the word "comptroller" got into the language merely because the word "controller" was originally misspelled. Be that as it may, it is not grounds for setting aside the nomination petition.

The questions of law raised, as designated in (b) and (c), supra, are really one, to wit: Does the court have jurisdiction at this time to pass upon the qualifications of a candidate in a proceeding to set aside the nomination petition, or must the challenge wait until after the primary and then if the candidate is elected, decide the question at the time of or immedi-

ately prior to his induction into office? This presents the gravamen of the legal question involved.

Section 976 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS §2936, provides that when any nomination petition is presented to the county board of elections for filing, it shall be the duty of the board to examine the same and to refuse to accept the petition if, inter alia: "(a) it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompaying affidavits . . ."

It is agreed on the record that the candidate, on his nomination petition affidavit, listed himself as "salesman", and in the same affidavit certified that he was eligible for the office, which regardless of the spelling, we shall refer to as "controller".

It is also admitted on the record that section 16 of The First Class Township Code of May 27, 1949, P. L. 1955, 53 PS §55525, provides that the qualified electors in first class townships shall elect as township controller one person *who shall be a competent accountant* and a registered elector of the township. It is to be noted that the code says that the electors shall *elect* a person who shall be *a competent accountant*. Does this not clearly provide that one who is not a competent accountant shall not be elected, and does this not answer the candidate's position that the challenge can only be brought after election?

Petitioner asserts that since the candidate in his affidavit to the nominating petitions designated himself salesman, this is a defect apparent on the record, and the board should have refused to accept the petition. With this we do not agree. In the affidavit, the candidate listed his *occupation* as salesman. This occupational designation does not affirmatively show that he is not also a competent accountant, and he certifies further in this affidavit that he is eligible for the

office which he seeks. While this latter may, and in this case certainly does, raise a question of fact, it is not a material error or defect apparent on the face of the accompanying affidavit, and we think that the election board was without power to have refused to accept the petition, but this is not to hold that the essential certification of eligibility contained in the affidavit is not open to challenge on the merits of the fact, and section 977 of the Election Code, 25 PS §2937, provides that all nomination petitions received and filed within the periods limited by the act shall be deemed valid unless within seven days after the last day for filing, a petition is presented to the court of common pleas setting forth the objections thereto and praying that the petition be set aside. This procedure was followed and the Election Code, sec. 977, supra, goes on to say that if the court shall find that the nomination petition is defective under the provisions of section 976, 25 PS §2936, it shall be set aside, or under certain conditions, permit amendments.

We think that the prime question now being tested by the appropriate procedure is whether or not the certification of the candidate accompanying the petition, to the effect that he is eligible for the office sought, is true or false. At this point, let us emphasize that no reflection, direct or implied, is here intended on the candidate's honesty. Admittedly on the record, he did not know of the provision in The First Class Township Code requiring that the township controller be a competent accountant, but if competency as an accountant is the test of eligibility and he meets that test, then the affidavit is true and proper. If, on the other hand, he does not meet the test, then he is ineligible and the affidavit is faulty and the nominating petition should be set aside.

Historically, in the United States of America, formal academic attainment has never been a pre-

requisite for any office to our knowledge, no matter how responsible nor how exalted, and in our opinion never should be. The efficacy of this philosophy need not be labored. On the other hand, the people of the United States and of the Commonwealth of Pennsylvania have from time to time defined minimum qualifications for many governmental and municipal offices. The necessity for and the propriety of such qualifications in this highly technical society also need not be labored here. Have, then, the people of Ridley Township, speaking through their legislative representatives, laid down minimum qualifications for controller in a first class township? The answer, we think, is that they have when the legislature wrote into The First Class Township Code, supra, the provision requiring the controller to be a "competent accountant". It is to be noted that the legislature did not require formal academic attainment as a qualification in line with the historic philosophy of this government, but it did say that the township controller must have these minimum nonacademic qualifications, and the reason underlying this requirement is apparent.

First class townships in Pennsylvania are big business. Indeed, the record in this case shows that the annual budget in this township is approximately $750,000. The record also shows that detailed technical accounting procedures are required by law in this township. The duties of the controller, as defined in section 25 of The First Class Township Code, 53 PS §56103, are as follows:

"The township controller shall superintend the fiscal affairs of the township. He shall examine, audit, and settle all accounts whatsoever in which the township is concerned, either as debtor or creditor, where provisions for the settlement thereof are made by law . . . ."

It would be improvident, if not dangerous, to declare one eligible to be controller with such responsibilities

who is not at least a competent accountant. The legislature, therefore, spoke and certainly these words have some meaning, and we are obliged to acknowledge that they have meaning and do our best to interpret what that meaning is.

In this case, qualified accountants were called and they described their familiarity with municipal accounting of the type involved here and the duties of a township controller, and they testified as to the knowledge required to be a competent accountant in the position of controller in this township. None of these witnesses suggested that academic attainment was necessary. None of them suggested that to meet the qualification one had to be exclusively, engaged in accounting, nor did they say even that one had to be expert in accounting, but they did say that one had to have knowledge of the techniques and procedures in accounting, which we say includes the ability to differentiate the various accounts and see that the items are applied in the proper accounts, the ability to know a capital from a noncapital expenditure and at least what a formal set of books of accounting should be and of what, as a minimum, they should consist, and how reports and accounts, interim and final, are cast and what records are necessary to provide the various checks and balances where the handling of large sums of money are concerned.

The record here discloses that the candidate, Horton, reached junior high school and then left because of poor grades and that he was once engaged as a butcher or meatcutter and considers that his trade, but that the experience and knowledge upon which he relies to qualify as a competent accountant is the fact that for six years he has been engaged as a milkwagon driver-salesman and that for six months he has been a foreman with five routes under him. His sole experience with accounting is keeping account of milk sold and

amounts paid by the customers on his route as kept in his route book, as well as for six months supervising the same thing in the route books of five other driver-salesmen. He is 26 years old.

Other witnesses on behalf of the candidate were called. The essence of their testimony was to the effect that they did not think the candidate as of now was a competent accountant but felt that he could become such.

We are not without authoritative definition of the words "competent accountant". The word "accountant" has been defined in Webster's Collegiate Dictionary as: "One who is skilled in, keeps, or adjusts, accounts". It has also been defined in Black's Law Dictionary, third edition, as "a person skilled in keeping books or acounts; an expert in accounts or bookkeeping. See U. S. ex rel., Liebmann v. Flynn, 16 F. (2d) 1006 . . ." "Accountant" has also been defined in Words and Phrases, vol. 1, p. 538, as follows: "An 'accountant' is one skilled in or who keeps books or accounts; one who makes keeping and examination of accounts his profession." Furthermore, in volume 8, p. 349, of Words and Phrases, the word "competent" is defined as follows: "means answering to all requirements; adequate; sufficient." Or one "possessing the requisite natural or legal qualifications . . . 274 N. Y. S. 702." " 'Competent' is synonymous with 'susceptible'; 'capable'; 'qualified'; 'fitting'; 'possessing legal power or capacity.' "

The Statutory Construction Act of May 28, 1937, P. L. 1019, in Pennsylvania provides that general words in statutes will be given their ordinary and common meaning unless some reason appears for limiting their scope (Sky v. Keystone Mutual Casualty Company, 150 Pa. Superior Ct. 613), and the courts have said that clear and definite provisions of statutes must be given reasonable construction in the light of

popular meanings of the words used (Walker v. Pennsylvania Railroad Company, 151 Pa. Superior Ct. 80), and that words in statutes must be interpreted as the ordinary man would understand them: City of Harrisburg v. Harrisburg Trust Company, 38 D. & C. 638.

The Supreme Court of Pennsylvania in Pedrick v. Gordin, 382 Pa. 26, said that "competent accountant" has a precise and well settled legal meaning and must be interpreted in the same sense in statutes unless a contrary meaning is plainly intended. See, also, Ryder Appeal, 365 Pa. 149; Commonwealth v. Hicks, 365 Pa. 153; McGinness v. Unemployment Compensation Case, 177 Pa. Superior Ct. 104.

We think, therefore, with the utmost kindness to this candidate, that he is presently not a competent accountant, nor indeed an accountant at all. It is urged upon us by counsel for the candidate that his qualifications are not now before us but might be if elected and his right to assume the office challenged. We are not unmindful of the lower court cases in Pennsylvania to the effect that the qualifications of a candidate are not to be passed upon as a prerequisite to nomination, nor are we unmindful of the inconclusive language of the Supreme Court in Mosby v. Armstrong, 290 Pa. 517, on the same question, but we think that the plain language of the legislature is to the effect that one, to be eligible for the office of controller in a first class township, must be a competent accountant, and we think that the Pennsylvania Election Code itself provides that eligibility is a prerequisite because it requires the candidate to take an affidavit to the effect that he is eligible and, if he does not, the petition should not be accepted, or having been accepted, should be set aside. It follows, therefore, that if the affidavit as to eligibility is false, however inadvertently, then this court must set the nominating petition aside, and if the

candidate be in fact ineligible, now and not after election is the time to determine this and to act thereon.

As pointed out by petitioner in this particular case, a perhaps untenable situation would arise if adjudication of the question were deferred until after election, because The First Class Township Code provides that vacancies in this office shall be filled by the township commissioners and for the unexpired term. Therefore, if the candidate elect was to be found ineligible or unqualified, we would have the situation where the commissioners were in a position to appoint their own financial supervisor and watchdog, and it is not sufficient answer to that to say that such appointee could also be challenged on the grounds of incompetency in accounting, because conceivably a competent accountant who would be the tool of the governing body might be appointed and it is no answer to this to say that conceivably the same could happen by the action of the people at an election. While it is conceded that the people might do so by mistake, it is inconceivable that they would do so by design, but the same may not be true of a governing body.

We think we would do a disservice to the citizens of Ridley Township if we were to forego adjudicating the question of eligibility on the ground of qualifications of the candidate for township controller until after election, thereby taking out of the hands of the people the right to elect their own controller and putting it in the hands of the governing body.

We therefore find as a fact that Donald Horton, the candidate for Township Controller in the Township of Ridley, a first class township, is not a competent accountant and therefore is ineligible for election to the office, and that the nomination petition filed by him is defective because his affidavit certifying that he is a competent accountant is inaccurate, and we therefore make the following

*Order*

And now, to wit, March 29, 1957, it is ordered, adjudged and decreed that the nomination petition filed by Donald Horton or by others on his behalf, wherein Donald Horton is named as a candidate for the office of comptroller (controller) in the Township of Ridley, be and the same is hereby set aside.

The costs of this proceeding are to be borne by the respective parties.