**ALLEN HAYNES, SR., a/k/a ALAN HAYNES, SR., Appellant/Plaintiff**

**v.**

**BASIL OTTLEY, JR., VIRGIN ISLANDS JOINT BOARD OF ELECTIONS, BOARD OF ELECTIONS, ST. CROIX DISTRICT, BOARD OF ELECTIONS, ST. THOMAS/ST. JOHN DISTRICT, CAROLINE FAWKES, VIRGIN ISLANDS SUPERVISOR OF ELECTIONS IN HER OFFICIAL CAPACITY, and THE GOVERNMENT OF THE VIRGIN ISLANDS, Appellees/Defendants**

S. Ct. Civil No. 2014-0071

Supreme Court of the Virgin Islands

December 1, 2014

DONNIE M. KING, ESQ., ROBERT L. KING, ESQ., Law Offices of Robert L. King, St. Thomas, USVI, *Attorneys for Appellant.*

JOEL H. HOLT, ESQ., Law Office of Joel H. Holt, P.C., St. Croix, USVI, *Attorney for Appellee Basil Ottley, Jr.*

KIMBERLY L. SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellees Virgin Islands Joint Board of Elections, St. Thomas-St. John Board of Elections, St. Croix Board of Elections, Caroline Fawkes, and the Government of the Virgin Islands.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and HOLLAR, *Designated Justice.*[1]

## OPINION OF THE COURT

(December 1, 2014)

PER CURIAM. Allen Haynes, Sr., appeals from the Superior Court's October 30, 2014 opinion and order, which dismissed — for lack of subject matter jurisdiction — his complaint challenging the eligibility of Basil Ottley, Jr., the Democratic Party's nominee for lieutenant governor, to serve in that position if elected. For the reasons that follow, we reverse.

## I. BACKGROUND

On August 18, 2014, Haynes filed a *pro se* complaint in the federal District Court of the Virgin Islands raising numerous challenges to the conduct of the Democratic Party's primary election held on August 2, 2014. While most of these claims related to other issues — such as the decision of the respective Boards of Elections[2] to refuse to postpone the election despite the fact that a tropical storm was scheduled to affect the Virgin Islands on that date, and allegations that certain absentee voting procedures were violated — Haynes also alleged that Ottley, the runningmate of Democratic gubernatorial candidate Donna Christensen, had not been a bona fide resident of the Virgin Islands for the preceding five years, and thus did not meet the minimum qualifications for lieutenant governor set forth in section 11 of the Revised Organic Act of

---

[1] Associate Justice Ive Arlington Swan is recused from this matter. The Honorable Brenda J. Hollar, a retired judge of the Superior Court, sits in his place pursuant to section 24, title 4 of the Virgin Islands Code.

[2] For ease of reference, throughout this opinion, the phrase "Boards of Elections" is used to refer to the Virgin Islands Joint Board of Elections, the St. Thomas-St. John Board of Elections, and the St. Croix Board of Elections.

1954. *See* 48 U.S.C. § 1591 ("No person shall be eligible for election to the office of Governor or Lieutenant Governor unless he is an eligible voter and has been for five consecutive years immediately preceding the election a citizen of the United States and a bona fide resident of the Virgin Islands."). The defendants to the District Court action filed a motion to dismiss on September 19, 2014.

The District Court took no action on the complaint or the defendants' motion to dismiss for two months. In the interim, Haynes retained counsel, who entered a notice of appearance on October 9, 2014, and the next day filed a motion to amend the complaint to remove all claims except his challenge to Ottley's eligibility. The District Court granted that motion on October 20, 2014, and held a hearing on October 21, 2014. The following day, the District Court dismissed Haynes's complaint for lack of subject matter jurisdiction, on the basis that he lacked Article III standing to bring his claim in federal court and that, in any event, the pertinent provision of the Revised Organic Act did not authorize a private right of action.

Two days later, on October 24, 2014, Haynes filed a complaint in the Superior Court of the Virgin Islands, together with motions for preliminary and permanent injunctions and to conduct expedited discovery. In his complaint, Haynes named Ottley, the Boards of Elections, Caroline Fawkes — the Supervisor of Elections — and the Government of the Virgin Islands as defendants, and asserted that Ottley had engaged in acts inconsistent with being a bona fide resident of the Virgin Islands, including maintaining a Maryland driver's license, paying income taxes to the federal government and the Maryland government rather than to the Government of the Virgin Islands, residing in Maryland with his wife and children, and declaring to be a resident of Maryland. As relief, Haynes requested a declaratory judgment that Ottley is ineligible to hold the office of lieutenant governor, and that Ottley's name be removed from the general election ballot, or, in the alternative, not be sworn into office if elected. Apparently by inadvertence, Haynes stated in his complaint that the Superior Court could exercise jurisdiction pursuant to 28 U.S.C. § 1331 — a statute authorizing federal district courts to exercise jurisdiction over cases involving a federal question — without citing to any other authority for the Superior Court's jurisdiction.

On October 27, 2014, Ottley as well as the Government defendants[3] separately moved to dismiss the complaint for lack of subject matter jurisdiction. The Superior Court held a hearing on October 28, 2014, which was limited solely to oral argument on the question of subject matter jurisdiction. At the hearing, when the erroneous citation to 28 U.S.C. § 1331 was noted, Haynes, through his counsel, orally "move[d] to amend the complaint in order to assert any left out statutes concerning jurisdiction," including 4 V.I.C. § 76 and 5 V.I.C. § 80, a statute allowing taxpayers to sue to enjoin illegal or unauthorized acts by the Government or its employees.[4] (J.A. 43.) The Superior Court stated that it would entertain any written motion to amend the complaint, and then proceeded to hear further argument. After the hearing concluded, Haynes filed a written motion to amend the complaint, which cited 5 V.I.C. § 80, as well as 18 V.I.C. § 412, 18 V.I.C. § 411, and 4 V.I.C. § 76 as sources of the Superior Court's jurisdiction.

On October 30, 2014, the Superior Court issued an opinion and order granting the motions to dismiss and dismissing Haynes's complaint for lack of subject matter jurisdiction. *Haynes v. Ottley*, Super. Ct. Civ. No. 486/2014 (STT), 2014 V.I. LEXIS 96 (V.I. Super. Ct. Oct. 30, 2014) (unpublished). While the Superior Court recognized that Haynes need not establish Article III standing to sue in a Virgin Islands court as opposed to a federal court, it agreed with the District Court that section 11 of the Revised Organic Act did not establish an express or implied private right of action. *Id.* at *12. Although it acknowledged that the Virgin Islands Legislature had adopted 5 V.I.C. § 80 to allow any taxpayer to "maintain an action to restrain illegal or unauthorized acts by a territorial officer or employee," and that "on its face, Haynes, as a taxpayer, could maintain an action to restrain the Joint Board of Elections and the Supervisor of

---

[3] For ease of reference, the terms "Government defendants" and "Government appellees" are used to collectively refer to the Government of the Virgin Islands, Fawkes, and the Boards of Elections.

[4] Although referred to as the taxpayer standing statute by the parties and in other judicial decisions, we note that 5 V.I.C. § 80 does not reference standing *per se*, but simply authorizes taxpayers to sue the Government "to restrain illegal or unauthorized acts by a territorial officer or employee, or the wrongful disbursement of territorial funds." By analogy, it is possible that 5 V.I.C. § 80 operates similarly to 42 U.S.C. § 1983, in that it may establish a substantive cause of action rather than granting a separate basis for invoking the jurisdiction of the Superior Court. Nevertheless, because this issue has not been briefed and is not necessary to our disposition of this case, we need not address it for purposes of this appeal.

Elections from what Haynes considers to be illegal . . . in permitting Ottley to run for the Office of Lieutenant Governor in violation of section 11 of the Revised Organic Act," *id.* at *13, the Superior Court concluded that another statute, 18 V.I.C. § 412, supplanted the authorization found in 5 V.I.C. § 80 or 4 V.I.C. § 76, which it identified as the more general statutes. *Id.* at *16. It further found that Haynes failed to comply with the section 412 procedure, in that section 412 mandated that he initiate any challenge to Ottley's qualifications within five days of the filing of his nomination petition or paper, which expired on May 23, 2014. *Id.* at *23.

Haynes timely filed his notice of appeal with this Court later that same day, on October 30, 2014, *see* V.I.S.CT.R. 4(a), along with a motion for summary action or expedited appeal, which Ottley opposed the following day. This Court, in an October 31, 2014 order, denied the motion for summary action, *see* V.I.S.CT.I.O.P. 9.4, but granted the request for expedited briefing. Haynes filed his appellate brief on November 10, 2014, while Ottley and the other appellees filed separate briefs on November 17, 2014. Even though the expedited briefing schedule granted him until November 24, 2014, to file a reply brief, Haynes elected to file his reply brief later that same day. On November 20, 2014, Ottley filed a motion to dismiss this appeal as moot, based on unofficial election results indicating that the Christensen/Ottley ticket had lost the November 18, 2014 run-off election. Haynes filed an opposition to the motion to dismiss on November 21, 2014.

## II. JURISDICTION AND STANDARD OF REVIEW

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a). Because the Superior Court's October 30, 2014 opinion and order dismissed all of Haynes's claims, it constitutes a final appealable judgment within the meaning of section 32(a). *Weary v. Long Reef Condo. Ass'n*, 57 V.I. 163, 165 (V.I. 2012) (citing *Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012)).

"[T]his Court exercises plenary review over questions relating to the Superior Court's subject matter jurisdiction." *Brunn v. Dowdye*, 59 V.I. 899, 904 (V.I. 2013) (citing *Judi's of St. Croix Car Rental v. Weston*, 49 V.I. 396, 399 (V.I. 2008)).

## III. ANALYSIS

This appeal presents us with two issues: (1) whether this appeal is now moot given the unofficial results of the November 18, 2014 run-off election, and (2) if not, whether the Superior Court erroneously dismissed Haynes's complaint for lack of jurisdiction solely due to his failure to challenge Ottley's nomination petition within the five-day period provided for in 18 V.I.C. §412. We address each issue in turn.

### A. This Appeal is Not Moot

In his motion, Ottley provided this Court with a newspaper article indicating that the Christensen/Ottley ticket lost the gubernatorial run-off to the ticket consisting of Kenneth Mapp and Osbert Potter. We need not determine whether we can consider this new evidence because we may take judicial notice of the fact that the gubernatorial run-off election took place on November 18, 2014 — one day after this case became fully briefed — and that unofficial results issued by the Elections System of the Virgin Islands at 9:30 p.m. as of that date indicate that the Christensen/Ottley ticket received approximately 36 percent of the vote while the Mapp/Potter ticket received almost 64 percent.[5] As such, we first address whether this appeal has become moot, given that Ottley may have potentially lost the election for lieutenant governor.

■ "[T]he mootness doctrine in the Virgin Islands is a non-jurisdictional claims-processing rule that has been incorporated into Virgin Islands law only as a matter of judicial policy." *Mapp v. Fawkes*, 61 V.I. 521, 530 (V.I. 2014) (citing *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 564 (V.I. 2012) and *Vazquez v. Vazquez*, 54 V.I. 485, 489 n.1 (V.I. 2010)). As such, this Court possesses the discretion to consider an otherwise moot issue on appeal. *See Benjamin*, 56 V.I. at 568 n.6 (considering, on the merits, claim that case should be reassigned to a different judge on remand, despite already holding to fully affirm on all other grounds, because failing to address the moot issue would "call into question the character of a sitting judge of the Superior Court without any basis whatsoever").

---

[5] Elections System of the Virgin Islands, Run Off Unofficial Result Post Time 09:30 PM, http://www.vivote.gov/Election 2014/Runoff reports/04 0930 PM Post Report.HTM, *archived* at http://perma.cc/HUW4-76GE.

■ First, we conclude that this appeal is not moot. The unofficial election results reported by the Supervisor of Elections are precisely that: *unofficial*, and thus subject to change.[6] Under Virgin Islands law, election results may not become final until potentially weeks after unofficial results are announced on Election Day. 18 V.I.C. § 627(b). As such, we conclude that Haynes's challenge to Ottley's eligibility to serve as lieutenant governor will not become moot until the Boards of Elections and the Supervisor of Elections officially certify Potter as the lieutenant governor-elect in accordance with the pertinent provisions of the Virgin Islands Code.

■ Even if we were to speculate, based on the large margin of victory reported in the unofficial results, that any change in the official election results will likely not affect the ultimate outcome, we would still conclude that dismissal of this appeal is not appropriate. Our resolution that this appeal remains viable is supported by at least one exception to the mootness doctrine, in that the underlying legal issue is capable of repetition yet evading review. As several courts have observed, "[c]hallenges to election laws are one of the quintessential categories of cases which usually fit this prong because litigation has only a few months before the remedy sought is rendered impossible by the occurrence of the relevant election." *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005); *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 n.4 (9th Cir. 2003) ("[E]lection cases often fall within the 'capable of repetition, yet evading review' exception to the mootness doctrine, because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits."); *Clark v. Arakaki*, 118 Haw. 355, 191 P.3d 176, 181-82 (2008) (declining to dismiss appeal of candidate's eligibility even though election had already occurred because "the brief period of time between the filing of [the candidate's] nomination papers and the election" made it likely that similar challenges would evade meaningful appellate review). This is especially true of appeals involving purely legal issues — especially those involving

---

[6] For example, this Court, in a recent opinion, cited to unofficial election results that had been released by the Supervisor of Elections on November 11, 2014, four days before the election was ultimately certified on November 15, 2014. *Mapp*, 61 V.I. at 535 n.13. Although those unofficial results indicated that only approximately 150 straight-ticket ballots had been cast, the official results reflected that the number exceeded 400.

questions of public importance — where the opinion rendered would establish a rule governing all elections, rather than only one particular election. *Gresh v. Balink*, 148 P.3d 419, 421-22 (Colo. App. 2006); *Telli v. Snipes*, 98 So. 3d 1284, 1285-86 (Fla. Dist. Ct. App. 2012); *Barrow v. Detroit Election Comm'n*, 305 Mich. App. 649, 854 N.W.2d 489, 496 (2014).

■ Moreover, the issue raised by Haynes in this appeal is an issue in which "[a]n authoritative guide for future controversies is needed." *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, 965 N.E.2d 1103, 1105, 358 Ill. Dec. 624 (2012). The record reflects that Haynes is not the only individual who challenged Ottley's eligibility during this election cycle. In a July 8, 2014 letter from Fawkes, in her capacity as Supervisor of Elections, to Moleto Smith — another candidate for governor who unsuccessfully ran against the Christensen/Ottley ticket in the Democratic Primary — stated that her initial review reflected that Ottley met the qualifications to serve as lieutenant governor and that she could not consider any further challenge to his qualifications because 18 V.I.C. § 412 provides that all nomination petitions are deemed valid if not challenged in court within five days. (J.A. 145.) To the extent that Fawkes or a future Supervisor of Elections may rely on this interpretation in future elections, the matter is appropriate for resolution by this Court as part of this appeal. *See, e.g.*, *Corbin v. Rodgers*, 53 Ariz. 35, 85 P.2d 59, 61 (1938) ("It is generally held, if it appears that a case raises questions which should be decided for the guidance of public officers in the future administration of law, it will not be dismissed as moot, but will be determined upon its merits."). Under these circumstances — "a focused, legal issue in sharp controversy" involving "an important aspect of [territorial] law that impacts upon the public trust" that has been "fully developed" by the parties and which "culminat[ed] in a . . . [Superior Court] opinion that warrants correction" — we decline to dismiss this appeal as moot.[7] *Commonwealth ex rel. Kearney v. Rambler*, 613 Pa. 32, 32 A.3d 658, 663 (2011); *see also Guam Election Comm'n v. Responsible Choices for All Adults Coalition*, 2007 Guam 20 ¶ 37 (2007).

---

[7] In his November 21, 2014 opposition, Haynes also implies that further proceedings before the Superior Court on remand may also not be moot because the proper method for determining bona fide residence under section 11 of the Revised Organic Act — an issue not adjudicated by the Superior Court in its October 30, 2014 opinion — is also an issue of public importance that is capable of repetition and may evade review. Our decision not to dismiss

## B. The Superior Court's Jurisdiction

On appeal, Haynes maintains that the Superior Court erred when it held that it lacked subject matter jurisdiction because 18 V.I.C. § 412 represented the sole mechanism through which an individual could challenge a candidate's eligibility to hold office. According to Haynes, 4 V.I.C. § 76 confers the Superior Court with original jurisdiction over all civil actions regardless of the amount in controversy, and other provisions of Virgin Islands law — such as 5 V.I.C. § 80 — may be construed as authorizing challenges to a candidate's eligibility outside of the section 412 framework.

█ █ The Superior Court is correct that, as a general rule, "specific statutes establishing comprehensive schemes for attaining judicial review in particular types of cases supplant statutes that broadly confer general jurisdiction." *V.I. Narcotics Strike Force v. Gov't of the V.I.*, 60 V.I. 204, 216 (V.I. 2013). Nevertheless, another well-established rule of statutory construction is that "the more specific statute takes precedence over the more general one, unless it appears the Legislature intended for the more general to control," or for both statutes to apply concurrently. *V.I. Pub. Servs. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 485 (V.I. 2008). In other words, when two statutes touch on the same subject, "we give effect to both unless doing so would be impossible." *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1225 (11th Cir. 2014) (citing *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143-44, 122 S. Ct. 593, 151 L. Ed. 2d 508 (2001)). After examining the plain text of the pertinent statutes, as well as case law interpreting similar enactments in other jurisdictions, we agree with Haynes that the Superior Court erred when it held that section 412 supplanted all other jurisdictional statutes.

### 1. *Plain Text of Section 412*

█ When interpreting the meaning of a statute, we first look to its plain text. *Murrell v. People*, 54 V.I. 338, 352 (V.I. 2010). This is because courts, as a general rule, should not adopt an interpretation of a statute that contradicts its plain text. *Id.*

█ The plain text of 18 V.I.C. § 412 reflects that the Legislature could not have intended for it to represent the exclusive means through

---

this appeal as moot should not be construed as a holding that the Superior Court, on remand, is without power to dismiss Haynes's complaint as moot.

which to challenge a candidate's eligibility to hold office. Section 412 reads, in its entirety, as follows:

*All nomination petitions and nomination papers received and filed under this chapter*, and accepted after the examination required by section 411 of this title, *shall be deemed to be valid*, unless, within five days after the last day for filing such nomination petition or papers, a petition is presented to the [superior] court, specifically setting forth the objections thereto, and praying that such petition or paper be set aside. A copy of the petition shall, within such period, be served on the officer with whom the nomination petition or paper was filed. Upon the presentation of such a petition the court shall make an order fixing a time for hearing which shall not be later than 10 days after the last day for filing such nomination petition or paper, and specifying the time and manner of notice that shall be given to the candidate named in the nomination petition or paper sought to be set aside. On the day fixed for the hearing, the court shall proceed without delay to hear such objections, and shall give the hearing precedence over any other business before it, and shall finally determine the matter not later than 15 days after the last day for filing such nomination petitions or papers. *If the court finds that the nomination petition or paper is defective under the provisions of section 411 of this title*, *or that it does not contain a sufficient number of genuine signatures of electors entitled to sign it under the provisions of this chapter*, *or was not filed by persons entitled to file it, it shall be set aside.* If the objections relate to material errors or defects apparent on the face of the nomination petition or paper, or on the face of the accompanying or appended affidavits, the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms as to payment of costs, as the court may specify. In case a petition under this section is dismissed, the court shall make such order as to the payment of the cost of the proceeding, including witness fees, as it shall deem just. If a person shall sign any nomination petitions or papers for a greater number of candidates than he is permitted under the provisions of this chapter, if such signatures bear the same date, they shall, upon objections filed thereto, not be counted on any petition or paper and if they bear different dates, they shall be counted in the order of their priority of date, for only so many persons as there are candidates to be nominated or voted for by an elector at the general election.

18 V.I.C. § 412 (emphases added). The first sentence of section 412 states that if a petition is not presented to the Superior Court within five days, the *nomination petition or paper* shall be deemed valid. A nomination petition is filed by candidates seeking a nomination by a political party — such as the Christensen/Ottley gubernatorial ticket — while a nomination paper is filed by independent candidates. Under the Virgin Islands Code, a valid nomination petition for an office elected Territory-wide must be signed by 25 registered and enrolled members of the political party in each of the St. Croix and St. Thomas-St. John election districts, and be accompanied by affidavits from the circulators of the petition as well as the candidate. 18 V.I.C. §§ 344-348. In other words, deeming a *nomination petition* to be valid — that is, that it contains the required signatures and affidavits — is not equivalent to deeming that the *candidate* has satisfied the minimum qualification requirements to be eligible for the office he seeks.[8]

The language in the latter portion of section 412 supports this interpretation. With respect to the remedy that the Superior Court may order, section 412 provides that the court mandate that the nomination petition or paper be set aside "[i]f the court finds that the nomination petition or paper is defective under the provisions of section 411 of this title, *or* that it does not contain a sufficient number of genuine signatures of electors entitled to sign it under the provisions of this chapter, *or was not filed by persons entitled to file it.*" 18 V.I.C. § 412 (emphasis added). This Court has previously interpreted this last clause — "not filed by persons entitled to file it" — as encompassing a candidate's eligibility to hold office; that is, that a candidate who does not meet the qualifications for the office cannot file a valid nomination petition or paper for that office. *Bryan v. Fawkes (Bryan I)*, 61 V.I. 201, 239 (V.I. 2014); *see also In re Horton*, 11 Pa. D. & C.2d 706, 713-14, 49 Mun. L Rep. 93, 44 Del. Co. 216 (Pa. Ct. Com. Pl. 1957) (interpreting the statute section 412 was

---

[8] We recognize that the affidavit each candidate must include with his nomination petition requires that the candidate state "that he is eligible for such office." 18 V.I.C. § 348. However, this requirement simply requires the candidate to state his subjective belief that he is eligible to hold office if elected; as such, deeming a nomination petition to be valid would simply require election officials to accept that the candidate believes that he meets the eligibility requirements. This is in accord with case law from Pennsylvania — the jurisdiction from which section 412 was modeled — holding that there is only a *presumption* that a nomination petition is valid, *In re Shimkus*, 946 A.2d 139, 140 (Pa. Commw. Ct. 2008), and that a challenger bears the burden of rebutting that presumption, *In re Cooper*, 163 Pa. Commw. 430, 643 A.2d 717, 720 (1994).

modelled after in the same manner). By making use of the disjunctive, section 412 recognizes that a defective nomination petition or paper and a candidate not meeting the minimum qualifications for office are separate and independent grounds for setting aside a nomination petition. *Accord Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 295 (V.I. 2014) (addressing similar use of disjunctive in Virgin Islands habeas corpus statute). As such, the first sentence of section 412, providing that a nomination petition "shall be deemed to be valid" if not challenged in court within five days, would only preclude future challenges relating to the first ground — that a nomination petition is defective, and thus not valid — but not those involving candidate eligibility.

### 2. *Legislative Intent*

■ The plain text of section 412[9] only provides that a nomination petition or paper is deemed valid if not challenged within five days, without making any reference whatsoever to an otherwise ineligible candidate becoming eligible. Because the statute, on its face, does not preclude further challenges to eligibility — as opposed to technical defects with the nomination petition or paper,— that should be the end of our inquiry, given that "literal interpretation of a statute is strongly favored." *Murrell*, 54 V.I. at 352; *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992) (a court "must presume that a legislature says in a statute what it means and means in a statute what it says there").

■ Nevertheless, even if we were to go beyond the plain text of section 412, the result would remain the same. It is well-established that when a legislature adopts a statute, it does so with knowledge of existing law. *Murrell*, 54 V.I. at 352-53 (collecting cases). Moreover, "this Court must presume that '[w]hen the legislature adopts a law . . . it intended that the entire statute be effective.'" *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009) (quoting *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995)). And when the Virgin Islands Legislature models a local statute after a statute adopted by another jurisdiction, "judicial decisions interpreting

---

[9] We note that section 412 itself refers to section 411, of which section 411(b) references candidate qualifications. The relationship between sections 411(b) and 412 as they pertain to qualifications is discussed *infra*.

[that] statute shall assist this Court in interpreting the same clause found in our local statute." *People v. Pratt*, 50 V.I. 318, 322 (V.I. 2008). All three of these maxims provide further support to our interpretation of section 412.

■■■ Title 18 of the Virgin Islands Code establishes a comprehensive framework governing elections in the Virgin Islands, with subchapter III of chapter 17 of title 18 containing several provisions regarding challenges to candidacies, including 18 V.I.C. § 411, a statute governing examination of nomination petitions and papers by the Supervisor of Elections, as well as section 412. As such, it is presumed that the Legislature, in enacting the provisions of chapter 17, subchapter III — as well as title 18 as a whole — would not enact superfluous statutes, or statutes that directly contradict each other, but instead intended for each provision to be effective. *Gilbert*, 52 V.I. at 356.

■■■ Of significance to this case, section 411(b) provides that "[i]f the Supervisor determines that a candidate for election or nomination does not meet the qualifications established by law for the office, then he *shall disqualify* such candidate and delete the candidate's name from the ballot if the ballots have not been printed."[10] 18 V.I.C. § 411(b) (emphasis added). Under Virgin Islands law, nomination petitions and papers must be filed by 6 p.m. on the "second Tuesday in May . . . of each general election year," 18 V.I.C. § 410(a)(2), well in advance of both the primary and general elections. Were the Superior Court correct to interpret section 412 as deeming a candidate's qualifications valid, as opposed to only the candidate's nomination petition or paper valid, it would render section 411(b) a nullity, in that the Supervisor of Elections would have no authority to continue to vet the candidate's qualifications at the conclusion of the five-day period despite having clear statutory authority to do so, at least up until the printing of the ballots. *See Gilbert*, 52 V.I. at 356 (noting that "this Court must presume that '[w]hen the legislature adopts a law . . . it intended the entire statute to be effective.' " (quoting *Halliburton*, 539 N.W.2d at 344). Notably, the Superior Court, in a well-reasoned decision issued more than three decades ago, previously explained that section 411(b) authorized the Supervisor of Elections to

---

[10] In fact, this Court has itself recognized a potential difference between a challenge to the validity of a nomination paper and a candidate's eligibility to hold office if elected. *See Bryan v. Fawkes (Bryan II)*, 61 V.I. 416, 460 n.22 (V.I. 2014).

continue to review a candidate's qualifications notwithstanding the "deemed to be valid" provisions of section 412. *Moorhead v. Gov't of the V.I.*, 18 V.I. 237, 243-44 (V.I. Super. Ct. 1982).[11] Importantly, section 412 became effective on February 20, 1963, when the Legislature adopted Act No. 936, and has not been expressly amended since; in contrast, section 411(b) became law when the Legislature enacted Act No. 2253 and it was approved by the Governor on June 26, 1968. As such, to the extent any conflict exists between these two provisions, section 411(b), as the most recent statute governing the same subject matter, must control in the event of a conflict.[12] *Simmonds v. People*, 59 V.I. 480, 501 (V.I. 2013) (collecting cases).

▆▆▆▆ These principles apply not just to neighboring provisions in title 18 of the Virgin Islands Code. As noted above, the Virgin Islands Legislature, when enacting a new law, is deemed to have knowledge of existing law. *Murrell*, 54 V.I. at 352-53. Thus, it is presumed to intend for the new law to operate in harmony with existing statutes and common

---

[11] In its October 30, 2014 opinion, the Superior Court cited to *Moorhead* for the proposition that section 412 "speaks not to the Supervisor of Elections but to the public at large," that therefore members of the public were bound by the five-day filing period, and that "if no such proper objection is made within the time period, the nomination petition or paper is deemed valid." *Haynes*, 2014 V.I. LEXIS 96, at *21. However, the *Moorhead* court never held that members of the public could not object to a candidate's qualification after the five-day period had expired; rather, it simply repeated the statutory language that a nomination petition or paper is deemed valid if no objection is lodged. As explained above, the fact that section 412 mandates that a nomination petition or paper be deemed valid if not timely challenged does not mean that an otherwise ineligible candidate becomes eligible. Nor did the *Moorhead* decision discuss 5 V.I.C. § 80, mandamus, *quo warranto*, or any alternate methods a member of the public may use to challenge a candidate's qualifications. In fact, the *Moorhead* court itself implied that failure to act within a required statutory timeframe cannot serve to make an otherwise ineligible candidate eligible. 18 V.I. at 244 n.15.

[12] Significantly, the very existence of section 411(b), combined with the plain text of section 412, provides strong evidence that section 412 cannot represent the sole means to adjudicate issues relating to eligibility. Section 411(b) authorizes the Supervisor of Elections to remove a candidate deemed ineligible at any point prior to the printing of the ballots, and is silent as to how that decision may be reviewed by a court. Yet section 412, by its own terms, provides that a section 412 proceeding may only be initiated to set aside a petition that has been *accepted* by the Supervisor of Elections. The fact that the plain text of section 412 would preclude a candidate deemed ineligible under section 411(b) from obtaining judicial review under section 412 provides strong evidence that the Legislature intended for issues of candidate eligibility to be adjudicated in proceedings other than the one authorized by section 412.

law. *Cascen v. People*, 60 V.I. 392, 404-05 (V.I. 2014); *see also Farina v. Nokia, Inc.*, 625 F.3d 97, 112 (3d Cir. 2010).

 Title 5, section 80 of the Virgin Islands Code predates the Legislature's adoption of 18 V.I.C. § 412. Section 80, which is amongst the original provisions found in the Virgin Islands Code, provides that "[a] taxpayer may maintain an action to restrain illegal or unauthorized acts by a territorial officer or employee, or the wrongful disbursement of territorial funds." This statute "is a remedial one, having the salutary purpose of affording to Virgin Islands taxpayers full and adequate relief from illegal actions of the territorial government and its officers." *Holmes v. Gov't of the V.I.*, 370 F. Supp. 715, 717-18, 10 V.I. 365 (D.V.I. 1974). Moreover, the language of section 80 is intentionally broad — even broader than comparable statutes in other jurisdictions — because at the time of its enactment, "the territorial governor [was] appointed from Washington and neither he nor the executive officers and employees appointed by him [were] answerable to the voters of the territory or subject to impeachment or removal by the elected territorial legislature." *Smith v. Gov't of the V.I.*, 329 F.2d 131, 133, 4 V.I. 489 (3d Cir. 1964). Nevertheless, Virgin Islands courts have continued to construe section 80 as meaning what it says, that any taxpayer may sue the Government or one of its officers or employees to prevent a violation of the law. *Donastorg v. Gov't of the V.I.*, 45 V.I. 259, 270 (V.I. Super. Ct. 2003) (quoting *Smith*, 329 F.2d at 133).

 In addition, the general jurisdiction statute — today codified as 4 V.I.C. § 76 but previously codified as 5 V.I.C. § 74 — confers upon the Superior Court and its predecessors — the Territorial and Municipal Courts — jurisdiction over "civil actions" in which exclusive jurisdiction had not been vested with the District Court. This includes actions for statutory or common law extraordinary writs, including writs of mandamus. *See* 5 V.I.C. § 1321; *Homer v. Lorillard*, 6 V.I. 558, 573 (V.I. Super. Ct. 1967). In fact, prior to the adoption of title 18 of the Virgin Islands Code, it was held that "[a] petition for writ of mandamus is the proper legal action to correct errors made by the Elective Boards." *In re Richardson*, 1 V.I. 301, 350 (D.V.I. 1936).

 Here, we cannot conclude that the Legislature intended for 18 V.I.C. § 412 to preempt 5 V.I.C. § 80 or 4 V.I.C. § 76 as it pertains to challenging a candidate's eligibility to hold office. Nothing in section 412 provides that it is the exclusive means to challenge eligibility. As such, for

section 412 to operate to the exclusion of sections 76 or 80, the statutes must be in some sort of irreconcilable conflict. *V.I. Pub. Servs. Comm'n*, 49 V.I. at 485. In other words, the fact that one statute provides one avenue for obtaining relief does not — without more — render all other statutes inapplicable.

As noted earlier, when the Virgin Islands Legislature models a local statute after a statute adopted by another jurisdiction, "judicial decisions interpreting [that] statute shall assist this Court in interpreting the same clause found in our local statute." *Pratt*, 50 V.I. at 322. The historical note preceding section 412 indicates that the Virgin Islands Legislature modeled section 412 after title 25, section 2937 of the Pennsylvania Election Code, a similar statute in Pennsylvania containing virtually identical language. *Coffelt v. Fawkes*, 765 F.3d 197, 199 (3d Cir. 2014). Thus, decisions issued by the courts of Pennsylvania interpreting its election code — while not necessarily binding on this Court — will provide substantial assistance in determining whether section 412 can co-exist with other methods of challenging eligibility, such as a section 80 action and actions for mandamus or other extraordinary writs. *V.I. Waste Mgmt. Auth. v. Bovoni Invs., LLC*, 61 V.I. 355, 364 (V.I. 2014) (citing *Chinnery v. People*, 55 V.I. 508, 519 n.6 (V.I. 2011)).

Pennsylvania case law provides strong support for Haynes's position that section 412 is not exclusive. The Pennsylvania Supreme Court examined the intersection between title 25, section 2937 of its Election Code and a challenge to a candidate's eligibility in *Chalfin v. Specter*, 426 Pa. 464, 233 A.2d 562 (1967).[13] In that case — in which it

---

[13] Prior to *Chalfin*, the Pennsylvania Supreme Court considered title 25, section 2937 in two other contexts. In one case, it held that section 2937 represented the exclusive remedy in a case where nomination petitions were challenged on grounds that the affidavits were defective because they were not printed using a form prescribed by the Secretary of the Commonwealth — Pennsylvania's equivalent to a Supervisor of Elections. *Thompson v. Morrison*, 352 Pa. 616, 44 A.2d 55, 58-59 (1945). In another case, where the challenger alleged that a candidate's affidavit could not have been signed by the candidate himself since the candidate had been hospitalized at the time, the Pennsylvania Supreme Court held that noncompliance with the limitations period in section 2937 could not be excused even if an individual seeking to raise an untimely challenge alleges fraud or some other excuse for filing out of time. *See Turtzo v. Boyer*, 370 Pa. 526, 88 A.2d 884, 885 (1952). However, unlike *Chalfin*, the challenges in these cases did not involve questions of candidate eligibility.

We note that the United States Court of Appeals for the Third Circuit relied on the *Turtzo* decision in interpreting section 412 in *Williams v. Todman*, 367 F.2d 1009, 5 V.I. 644 (3d Cir.

had been alleged that an incumbent district attorney was not eligible to run for mayor without first resigning from his post — a majority of the Pennsylvania Supreme Court concluded that the fact that the limitations period codified in section 2937 of the Election Code had lapsed served as no bar to the challenge. In the controlling opinion on the issue of jurisdiction authored by Chief Justice Bell,[14] the Pennsylvania Supreme Court held that the provisions of the Pennsylvania Election Code were not exclusive and did not eliminate the right to challenge a candidate's eligibility pursuant to the common law writ of *quo warranto*[15] or a taxpayer's lawsuit:

> [T]o extend this [provision of the Elections] Code to facts such as are here involved would extirpate *quo warranto*, which the provisions of the Code never eliminated or were intended to eliminate.

> *Quo warranto* is the traditional and long-established action to try title to office. The general rule is well settled that, with certain excep-

---

1966), when it affirmed the dismissal of a complaint alleging that some of the candidates nominated by the Republican Party were actually Democrats, and held that all provisions in section 412 were mandatory. *Id.* at 1013. Although the *Williams* case was not cited by the Superior Court in its October 30, 2014 opinion, we recognize that the Superior Court may have felt itself bound to follow that decision as binding precedent. However, the *Williams* case, in addition to not involving a question of candidate eligibility, was issued prior to the 1968 amendments to section 411 that clarified that the Supervisor of Elections may disqualify and remove a candidate from the ballot for failing to meet the minimum qualifications for office at any time prior to the printing of the ballots. For that reason the *Williams* decision is not relevant to the question before this Court in the instant appeal, since the enactment of section 411(b) two years later established — at least for questions relating to eligibility — that section 412 is not the exclusive means to challenge a candidate's qualifications to hold office.

[14] Nominally, the *Chalfin* decision lacked a true majority on all issues, given that three justices voted to affirm out of a belief section 2937 served as the exclusive method to challenge eligibility, an additional three justices voted to reverse because they believed that section 2937 was not exclusive and concluded that the candidate should be removed from the ballot as a remedy, and Chief Justice Bell alone determined that section 2937 was not the exclusive means to challenge eligibility but that the decision should nevertheless be affirmed because the candidate should not be removed from the ballot. Because four justices agreed that taxpayer suits or actions for equity or *quo warranto* could serve as vehicles to challenge eligibility even when the limitations period in section 2937 expired, later decisions of the Pennsylvania Supreme Court have cited to Chief Justice Bell's discussion of jurisdiction as controlling. *See, e.g., Spykerman v. Levy,* 491 Pa. 470, 421 A.2d 641, 650 (1980); *DeFranco v. Belardino,* 448 Pa. 234, 292 A.2d 299, 300 (1972).

[15] "*Quo warranto* is 'a common-law writ used to inquire into the authority by which a public office is held or a franchise is claimed.' " *Dejetley v. Kaho'ohalahala,* 122 Haw. 251, 226 P.3d 421, 435 (2010) (quoting BLACK'S LAW DICTIONARY 1371 (9th ed. 2009)).

tions hereinafter set forth, *quo warranto* is the sole and exclusive remedy to try title or right to office, whether the right which is challenged is that of a *de jure* or a *de facto* officer. Where, because of exceptional facts and circumstances, *quo warranto* does not furnish an adequate and full remedy, it is the paramount right of the public to have an adequate remedy granted through equity. . . .

It is likewise part of the general rule that *quo warranto* can be brought only by an Attorney General, or by a District Attorney, or by a person who has a special right or interest as distinguished from the right or interest of the public generally, or has been specially damaged.

However, there is likewise a well settled general rule that a taxpayer has a right and a standing to sue to enjoin public officials from wrongfully or unlawfully expending public money, and in such cases the complainant need not have any special interest which is damaged other than his interest as a taxpayer.

Sometimes these two general rules collide or overlap. Moreover, appellant points out that in recent years exceptions have been wisely recognized by the Courts to the narrow circumscribed limited remedy of *quo warranto* for several reasons: (1) *quo warranto* does not always furnish an adequate and full remedy; (2) the wisdom of applying a remedy which will avoid a multiplicity of suits; (3) the paramount right of the public to have a surer and more adequate remedy to restrain wrongful acts by a public official, including the unlawful expenditure of public money. Where such circumstances exist, equitable relief has been granted through a taxpayer's bill or other injunctive or equitable remedy.

*Chalfin*, 233 A.2d 566-67 (internal citations, emphasis, and quotation marks omitted).

█ This is also in accord with decisions of the courts of other jurisdictions that, like the Virgin Islands and Pennsylvania, have enacted comprehensive elections codes with strict time limits for challenging candidates' petitions. Such courts have universally held that statutes similar to section 412 were not intended to supersede more general statutes or common law remedies even if the elections statute expressly provided a deadline by which a candidate's qualifications could be challenged. *See, e.g., State v. Young*, 362 S.W.3d 386, 394 (Mo. 2012) (holding that enactment of a Missouri statute authorizing a candidate to

judicially challenge another candidate's qualification to hold office within 30 days of filing of nomination petition did not eliminate common law action for writ of *quo warranto*); *Child v. Lomax*, 124 Nev. 600, 188 P.3d 1103, 1106-07 (2008) (holding that statute authorizing one to challenge a candidate's qualifications within five days did not eliminate right to challenge qualifications through an original proceeding for writ of mandamus); *DeStefano v. Berkus*, 121 Nev. 627, 119 P.3d 1238, 1240 (2005) (rejecting argument that a new statute providing for challenge to a candidate's qualifications in a summary manner if filed within five days implicitly repealed or limited more general statute providing for candidate to seek declaratory judgment to determine candidate's residency); *Jacobs v. Yates*, 342 Ark. 243, 27 S.W.3d 734, 739 (2000) (holding pre-election challenge to candidate's eligibility was cognizable through petition for writ of mandamus even though statute established a comprehensive procedure for challenging qualifications following the election); *Jennings v. Woods*, 194 Ariz. 314, 982 P.2d 274, 279-80 (1999) (allowing challenge to candidate's eligibility in *quo warranto* proceeding brought by private party, notwithstanding existence of an election contest statute providing for a statute of limitations that had already lapsed); *White v. Manchin*, 173 W. Va. 526, 318 S.E.2d 470, 478 (1984) (holding that election contest statute does not eliminate use of proceedings for mandamus, *quo warranto*, or prohibition as means for resolving questions relating to qualifications of candidates for office) (quoting *Adams v. Londeree*, 139 W. Va. 748, 83 S.E.2d 127, 131 (1954)); *White v. Miller*, 235 Ga. 192, 219 S.E.2d 123, 124 (1975) (holding election contest statute and *quo warranto* action filed by taxpayer may both be utilized to challenge candidate's eligibility to hold office, and that taxpayer may initiate *quo warranto* action even after time for initiating election contest has lapsed) (citing *Hulgan v. Thornton*, 205 Ga. 753, 55 S.E.2d 115 (1949)); *see also Mafnas v. Hefner*, 1 N.M.I. 22, 24-25 (1989) (holding taxpayer may bring *quo warranto* action to challenge eligibility of individual serving as Presiding Judge of Northern Mariana Islands Superior Court).

 The reason why section 412 should not operate to the exclusion of other jurisdictional conferring statutes is clear. Section 412 provides a "simpler and potentially less costly procedure to remove a name from the ballot," while the other remedies provide for "an alternative legal path available to those who have not filed a challenge within [that] time limit"

that may involve a more drawn out legal proceeding and not necessarily result in a quick decision. *DeStefano*, 119 P.3d at 1240; *see also Child*, 188 P.3d at 1107 (emphasizing procedural differences and different forms of relief available in an election contest as compared to an original proceeding for writ of mandamus). Such alternate paths are appropriate because "discovering and resolving questions of a candidate's residency may require much more effort and a much less perfunctory analysis than challenges to other possible qualifications." *DeStefano* 119 P.3d at 1241.

■■ As we emphasized in our *Bryan I* decision, a section 412 proceeding initiates a summary *in rem* proceeding in which traditional procedural rules simply cannot apply due to the severe time constraints imposed by the statute, including that a petition be filed within five days, a hearing occur within ten days and a final judgment be entered within fifteen days. 61 V.I. at 239 n.30. As such, the section 412 procedure may on occasion prove inadequate in a case where the circumstances surrounding a candidate's potential ineligibility do not come to light until after expiration of the five-day filing period, or where the party questioning a candidate's eligibility will need to conduct discovery to prove his claim.[16] This is particularly true when the challenge to eligibility is premised on a claim that a candidate has failed to meet a residency requirement, since a residency challenge would be more likely to require application of the full panoply of rules generally applicable to civil proceedings, including those pertaining to discovery. In fact, in this very case Haynes sought discovery from Ottley and the Government in support of his claim that Ottley had not been a bona fide resident of the Virgin Islands for the past five years.[17] Yet a blanket rule that a

---

[16] *See, e.g., Mapp v. Lawaetz*, 882 F.2d 49, 51 (3d Cir. 1989) (noting that candidate's ineligibility to serve as a senator was not discovered until months after the election).

[17] In his appellate brief, Ottley contends that Haynes filed his complaint as a political stunt to distract him from his campaign. Because Haynes's motivation for filing his complaint is wholly irrelevant to the narrow legal issue before us — whether section 412 represents the exclusive method through which one may challenge a candidate's eligibility to hold office — we decline to consider this argument on appeal. Nevertheless, we recognize that the existence of multiple separate avenues to challenge a candidate's eligibility could potentially result in duplicative litigation that may, in effect, harass a candidate, particularly if the challenger seeks to abuse the discovery process to potentially obtain embarrassing information. We note, however, that courts in other jurisdictions have attempted to remedy this concern by holding that res judicata, issue preclusion, and similar doctrines apply to challenges to a candidate or official's qualifications to hold office. *See, e.g., Hoffman v. Sec'y of State of*

candidate's eligibility to hold office if elected cannot be questioned if the candidate's nomination petition or paper has not been challenged within five days would provide candidates with a strong incentive to conceal their potential residency or other eligibility deficiencies until they could no longer be challenged. *See Jennings*, 194 Ariz. at 320 (refusing to treat election contest statute as sole method to challenge qualifications given that the facts demonstrating a candidate's ineligibility might not be disclosed until after the limitations period has already expired). Unquestionably, such an interpretation would greatly undermine public confidence in the election system. *DeStefano*, 119 P.3d at 1241.

### 3. *Absurd or Unintended Results*

■■ Our interpretation of section 412 is also consistent with the maxim that courts should not interpret statutes in ways that will lead to absurd or clearly unintended results. *Peters v. People*, 60 V.I. 479, 483 (V.I. 2014) (quoting *Brady v. Gov't of the V.I.*, 57 V.I. 433, 442-43 (V.I. 2012)); *see also Gilbert*, 52 V.I. at 357 (citing *American Dredging Co. v. Local 25, Marine Division, Int'l Union of Operating Engineers*, 338 F.2d 837, 842-43 (3d Cir. 1964)). It is well-established that an individual aggrieved by a decision of a government official may challenge that decision by arguing that the official is holding office illegally. *N.L.R.B. v. Canning*, 134 S. Ct. 2550, 2578, 189 L. Ed. 2d 538 (2014) (affirming reversal of National Labor Relations Board decision on grounds that its members received illegal recess appointments when Congress was still in session). Under Virgin Islands law, the lieutenant governor, among other duties, serves as Commissioner of Insurance, *see Matter of Dome Ins. Co.*, 592 F. Supp. 1219, 1220 (D.V.I. 1984) (acknowledging that references to "Commissioner of Insurance" in Virgin Islands Code refer to the lieutenant governor), Chair of the Banking Board, *see* 3 V.I.C. § 42, the head of the Office of Legal Publications, *see* 3 V.I.C. § 34(a), certifies notaries public, *see* 3 V.I.C. § 771(a), registers trade names, *see* 11 V.I.C. § 1201, and accepts filings of articles of incorporation, *see* 13 V.I.C. § 3.

Unquestionably, pursuant to *Canning* and similar decisions, any individual aggrieved by one of the lieutenant governor's official acts —

---

*Maine*, 574 F. Supp. 2d 179, 186 (D. Me. 2008) (applying issue preclusion to prohibit relitigation of earlier decision concerning validity of candidate's nomination petition); *State v. Lowe*, 2014 Ohio 1817, ¶ 2 (Ohio Ct. App. Apr. 30, 2014) (unpublished) (applying res judicata to claim concerning judge's qualifications).

such as someone denied a license to serve as a notary public — could challenge the lieutenant governor's eligibility to serve in that position. And any voter could challenge the eligibility of a candidate for lieutenant governor by filing a petition with the Superior Court within five days of the candidate filing his nomination petition or paper. 18 V.I.C. § 412. Yet if we were to agree with Ottley and the Government that section 412 represents the only method to challenging a candidate's eligibility to serve prior to that candidate assuming office, it would create a regime where eligibility may be challenged within five days of the candidate filing his nomination petition or paper and then may not be challenged again until after the candidate is elected and sworn into office, at which point his eligibility may be challenged at any point while he continues to hold that office. Such a procedure would be absurd on its face. *See Morgan v. Gay*, 466 F.3d 276, 279 (3d Cir. 2006) (concluding that it is absurd to construe statute as preventing an appeal within first seven days and then authorizing an unlimited amount of time to appeal) (collecting cases).

While not raised by Ottley or the Government appellees, we recognize that the Legislature, despite knowing that an official's qualifications may be challenged at any time while he or she holds office, may have chosen to impose a five day limitations period on challenging nomination petitions in order to not disrupt the elections process. But as noted earlier, the Legislature amended 18 V.I.C. § 411(b) in 1968 in order to expressly allow the Supervisor of Elections to review candidate qualifications and to remove ineligible candidates up until the date ballots are printed. As such, even if the Legislature could restrict challenges to eligibility in such a manner in order to allow for an orderly election, it has clearly not done so, at least as to the 1968 amendment to section 411(b).

In any case, we are persuaded by a decision of a Pennsylvania court, issued prior to the Virgin Islands Legislature enacting section 412, in which it held that deferring adjudication of eligibility challenges until after the election has occurred would be "untenable" and, in effect, disenfranchise voters if the court found a candidate ineligible to serve:

> It is urged upon us by counsel for the candidate that his qualifications are not now before us but might be if elected and his right to assume the office challenged. . . .
>
> As pointed out by petitioner in this particular case, a perhaps untenable situation would arise if adjudication of the question were de-

ferred until after election, because The First Class Township Code provides that vacancies in this office shall be filled by the township commissioners and for the unexpired term. Therefore, if the candidate elect was to be found ineligible or unqualified, we would have the situation where the commissioners were in a position to appoint their own financial supervisor and watchdog, and it is not sufficient answer to that to say that such appointee could also be challenged on the grounds of incompetency in accounting, because conceivably a competent accountant who would be the tool of the governing body might be appointed and it is no answer to this to say that conceivably the same could happen by the action of the people at an election. While it is conceded that the people might do so by mistake, it is inconceivable that they would do so by design, but the same may not be true of a governing body.

We think we would do a disservice to the citizens of Ridley Township if we were to forego adjudicating the question of eligibility on the ground of qualifications of the candidate for township controller until after election, thereby taking out of the hands of the people the right to elect their own controller and putting it in the hands of the governing body.

*Horton*, 11 Pa. D. & C.2d at 713-14.

These concerns apply with equal force to the Virgin Islands; pursuant to the Revised Organic Act, the governor and lieutenant governor are popularly elected. 48 U.S.C. § 1591. However, if the office of lieutenant governor becomes vacant — as would be the case if the lieutenant governor is declared ineligible after having being elected and sworn into office — the Revised Organic Act provides that "the Governor shall appoint a new Lieutenant Governor, with the advice and consent of the legislature, to hold office for the unexpired term." 48 U.S.C. § 1595(d). Thus, interpreting the pertinent statutes as establishing a scheme where challenges to a lieutenant governor candidate's eligibility may be brought within five days, and then — regardless of the circumstances — cannot be brought again until after the challenged candidate has already been sworn into office would, in effect, deprive Virgin Islands voters of their right to vote for an eligible combined governor/lieutenant governor ticket.

## IV. CONCLUSION

Although the Supervisor of Elections has issued unofficial results indicating that the Mapp/Potter gubernatorial ticket has resoundingly won the run-off election, we decline to dismiss this appeal as moot because the election has not yet been officially certified, and because at least one exception to the mootness doctrine cautions against dismissal. As to the jurisdictional question, we conclude that the Superior Court possessed jurisdiction to consider Haynes's challenge to Ottley's eligibility to serve as lieutenant governor notwithstanding the fact that the five-day limitations period set forth in section 412 had passed.

In reaching this decision, we express no opinion as to what statutory or common law remedy is appropriate; while Haynes invoked 5 V.I.C. § 80 in his amended complaint, he also stated that the Superior Court possessed jurisdiction under 4 V.I.C. § 76, which generally grants the Superior Court jurisdiction over civil disputes. Thus, Haynes could, in addition to or instead of pleading a claim under 5 V.I.C. § 80, assert other equitable claims under 4 V.I.C. § 76, notwithstanding the fact that those causes of action were not pleaded by name in his complaint. *Mapp*, 61 V.I. at 534 n.11 (citing *Johnson v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 347, 190 L. Ed. 2d 309 (2014)). In noting the possible availability of these options, we express no opinion as to whether Haynes has actually pleaded sufficient facts to succeed on the merits of any of those causes of action, or whether any affirmative defenses are available to the defendants which may defeat those claims.[18] Rather, we reverse the October 30, 2014

---

[18] By holding that a candidate's eligibility may be judicially challenged outside of the section 412 procedure, we do not mean to imply that an action under section 80 or for a common law writ may be brought at any point at all, such as the month, week, or day before the election. For instance, in their appellate brief, the Government appellees assert that Haynes's complaint is barred by the doctrine of laches, and Haynes has cited to no authority — and we can find none — for the proposition that laches cannot serve as an affirmative defense to an action brought under section 80. On the contrary, at least one court has held that laches may serve as a defense to a claim brought under section 80. *Holmes v. Gov't of the V.I.*, 370 F. Supp. 715, 718, 10 V.I. 365 (D.V.I. 1974).

Laches, however, is not a jurisdictional bar to a complaint, but an affirmative defense. *See* FED. R. CIV. P. 8(c)(1). As such, even if the Government appellees were correct that Haynes was not diligent in filing his challenge to Ottley's eligibility in the Superior Court on October 24, 2014, it would not defeat the Superior Court's subject matter jurisdiction, but only serve as a defense on the merits. Moreover, "the question of laches presents a mixed question of law and fact." *Johnson v. Johnson*, 2014 UT 21, 330 P.3d 704, 707 (2014). As

opinion and order and remand this matter to the Superior Court for the sole purpose of allowing it to consider Haynes's complaint on the merits or, if appropriate, dismissing it as moot if the election results are subsequently certified and no legitimate reason exists to proceed into a merits inquiry.

---

such, to the extent that laches represents a defense available to the Government in a case of this nature, it cannot be adjudicated for the first time on appeal, given that the Superior Court has not made any factual findings. *See In re Marriage of Heinrich*, 2014 IL App (2d) 121333, 380 Ill. Dec. 26, 7 N.E.3d 889, 903 (2014) (noting that laches may not be adjudicated for the first time on appeal because it "must be pleaded and proved" in the trial court).